May it please the court, I'm Aubrey Fletcher on behalf of petitioners. Can your honors hear me? Yes. Thank you. As to all of the applications for relief in this case, the immigration judge overlooked relevant evidence and failed to conduct a complete and proper legal analysis of the facts. We're asking that this court remand the matter for consideration of all evidence under the proper analytical frameworks. As a threshold issue, petitioners were not eligible to even file an application for asylum from the Philippines. It seems to me, before we even get into the merits, I mean, that there was a supplemental brief filed a week before oral argument, correct? Correct, your honor. And so I've got some questions about, we haven't ruled on whether we would even accept that at this point, or whether if we do, whether the government needs time to respond. Because this case has been going on for a long time, and then to suddenly file something the week before oral argument. So I've got a couple of questions right there. What's your authority for accepting something at this very late date? And also, too, to the extent that the supplemental brief seeks to raise issues that were not raised before the agency, or questions of adequacy of your client, Ms. Kaur's attorney, why isn't a proper remedy to file a motion to reopen with the BIA? That would be a proper remedy, your honor. We were recently retained and are still exploring what that motion to reopen would look like before the board. But that is something we are considering. The only reason we filed a proposed supplemental brief so late was because we were retained so late. And it's our position that it doesn't raise new arguments except for the one that I just stated, which is more of a concession, really. We thought it might be helpful to the court, and it was certainly helpful to us to do it, to frame the issues in a more organized and straightforward way. But I do not see any of the arguments in that brief as new, or any of the facts alleged as new. Well, the court found against her on the resettlement issue, and that wasn't appealed to the BIA, right? I would argue that it was raised on appeal to the BIA, but it was regardless exhausted before the agency because the board did weigh in on it, because it was a bravado affirmance. All the issues that were before the IJ are deemed to have been before the board, and there's a lot of case law from that issue was exhausted, even if this court finds that it wasn't raised in the board brief from prior counsel. And then it wasn't weighed... So was it raised in the opening brief by the original appellate's counsel? Before this court, yes, it was, Your Honor. There are about two pages of argument devoted to that issue. So the one new thing in our proposed brief is more of a concession, which is that the applicants weren't even eligible to seek asylum in the Philippines. The only country of nationality is India. They are eligible to seek withholding of removal and cap protection from the Philippines, but not asylum. I just want to make sure I understand. So what you're saying is the only new argument that you're advancing is the notion now that they... India is the relevant area, the country of persecution, is that correct? Not the Philippines? Well, for asylum. So the asylum statute at USC 1101A42 says that you can only apply... Basically it says you can only apply for asylum from the country where you're either a national, a citizen, or if you're stateless, the country of last habitual residence. These petitioners are not stateless, and their only country of nationality is India. So they can't seek asylum from a third country. So in terms of whatever happened to petitioners in Philippines is not relevant to asylum? It's relevant in terms of the firm resettlement issue. I understand that, but in terms of the issue of persecution, class persecution, it's only India that we're looking at. For asylum, yes. And then where does the... What you consider just a helpful supplemental brief had us all thinking you wanted to substitute a whole new course of action here. So we're adjusting as we speak, at least I am. So I want to make sure that on the Philippines, in terms of the alleged persecution there, that goes to withholding of removal and cap? Yes, Your Honor, exactly. Convention against Turkey. So the applications that are still alive are the application for asylum from India on which both petitioners are included, and then Ms. Carr's applications for withholding and cap protection from both countries. The Indian asylum application was denied by the immigration judge because she found that petitioners had firmly resettled in the Philippines. In reaching that conclusion, she relied only on three facts. The fact that Ms. Carr had lawful permanent residence status in the Philippines, the length of her residence, and her ability to reenter. But the regulation at 8 CFR 1208.15 sets forth specific factors that the IJ should have considered. One of the major ones is the extent to which Ms. Carr was able to enjoy the rights and privileges ordinarily available to other residents or people who reside in the Philippines. And here, Ms. Carr's family suffered numerous instances of racially motivated violence in the Philippines in a context of an unchecked pattern of killings of Indians there. What facts specifically in the record connects it to a racial motive versus robberies having to do with the nature of the business that she and her family were engaged in? Yes, Your Honor. That nexus question that Your Honor is asking goes to the withholding claim, not to the firm resettlement inquiry. But to answer the question, the facts are, the evidence is circumstantial there. Because I know the judge found on the withholding claim and asylum that the robberies were based only on an interest in money. And that ignored the facts. And she was in the money lending business. Exactly. I mean, there's people in this country that have been robbed twice. Exactly. And she reported the first one. They didn't catch anyone. She didn't report the second one. And what evidence do you have that they failed to protect her on this? Well, if I may address the nexus issue and then the failure to protect, if that's okay with the judges, I feel there are two pending questions. So as to nexus, first, she wasn't only robbed twice in the Philippines. Her husband was beaten multiple times. The last time it led to his death. She was threatened at knife point in her home. Her daughter was threatened with kidnapping. And all of this was in a context of this pattern. So at the record, the evidence about nexus is in the record at pages 455 through 67, which shows there was a pattern of killings of Punjabis, of Indians, particularly Punjabis, in the Philippines. And the other evidence regarding nexus is Ms. Carr's own testimony that it was common knowledge that everyone knew that, as she put it, they're killing Indians over there and that the police don't protect Indians. And that was circumstantial evidence, which could be sufficient to show a nexus. And the judge didn't consider it when she denied withholding. She still has family over there who's in the same business, running a money lending business. Is that right? I didn't see any support for that in the record. I saw that the judge said that. I didn't see that in the record, and I may have missed it, Your Honor. But regardless, her family has refused to offer her any support or help. And I also don't know that they're similarly situated. But my point is that the judge didn't consider all this. If you're wrong and it is in the record, then the fact that they are Punjabis, correct? Correct. And they're existing there without persecution. Right. That gives the lie, doesn't it, to the notion that they're targeting Punjabis? It is relevant to that question, Your Honor. Our position is that the judge didn't consider all the facts she was supposed to, and that would certainly be one of them. That was one of them. But the judge didn't look at all the facts. She didn't follow all of the regulatory frameworks and statutory frameworks she was supposed to. And as to Judge Callahan's question about state protection, the judge's analysis of that was incomprehensible. I can't tell from her language whether she found that the government was unable to protect Ms. Carr or not. The language used by the judge, I don't know how this Court can meaningfully review. I'd like to reserve the balance of my time, if I may. All right. Thank you. Good morning, Your Honors, and may it please the Court, I'm Jonathan Robbins, here on behalf of the respondent, Eric Holder. Can you hear me? Now we can. Thank you. Well, obviously this is a bit of a complicated case because there's six different forms of relief here to two separate countries. For each country, India and the Philippines, we have asylum, withholding of removal. I think you're going to have to speak more directly into the microphone. Is that better? Yes. We have three separate forms of relief for each country, asylum, withholding of removal, and protection under the United Nations Convention on the Rights of Persons with Disabilities. The first place to start is with the asylum claim out of India. Actually, I think probably the first place to start is with Your Honors' question. If we accept the supplemental brief, do you need an opportunity to respond to that? Absolutely. Again, it's the government's position that it shouldn't be accepted. However, if it is accepted, certainly the government should have an opportunity to respond in writing to the new claims that were made. And there are certainly new claims being made here. For example, they allege that there's a problem with the interpreter in this case. That was not brought before the board. That was not ever raised until six days ago. That's okay. We know what's in the briefs, so why don't you focus on what you can focus on. If it includes some of the things that are in the supplemental brief, that's fine. But that won't prejudice your ability to file something in writing. Okay. Thank you, Your Honor. Well, with respect to the claim for asylum out of India, the board and immigration judge both properly held that she had been firmly resettled in the Philippines. She moved there in 1992. She lived there for ten years. She operated a business. She traveled freely to and fro in and out of the country. She was offered legal permanent residence there, which in her own words, in her testimony, lasted forever. And again, this is not an issue that they raised to the board. If you read their brief to the board, they don't mention the term firm resettlement. It's just something they didn't challenge, probably because it was such an obvious finding that she'd been firmly resettled there. But even though she had been granted permanent residency, she's not able to own property there. There was a line in testimony where she claimed that foreigners aren't allowed to own property there, but that wasn't really developed. I mean, we know that she was able to operate a business there. She had a bank account there, so it's not clear what was being meant, whether she was referring to purchasing land. So is there anything other than her statement, or is there any other evidence in the record that Philippine authorities will not allow her to own property? There's nothing in the record other than her own statement, however, that I saw in the record. But again, this is one of the reasons we require exhaustion. Had they raised this issue to the board and argued we're not allowed to own property, the immigration judge got it wrong, the board would have had an opportunity to examine the issue and determine whether or not the firm resettlement finding should be upheld. They didn't do that, and as a consequence, this court doesn't have jurisdiction over that not administratively that they didn't exhaust it, so we shouldn't even consider it. But even if we did consider it, you're saying that the record is sufficient to show that she was firmly resettled? Well, certainly based on the immigration judge's finding, absolutely. Well, what's the authority for the argument that because Mrs. Kaur firmly resettled in the Philippines, she may not allege persecution in India as a basis for asylum? What's the authority for that argument? That's in the statute. There's a safe third country exception for those who apply for asylum, where if they have been determined to have firmly resettled in a safe third country that they can't apply for asylum from the original country of nationality. So it's set forth in the statute in the Immigration and Nationality Act. So what's the effect of what they're arguing now is because she never would have been eligible for asylum in India. What's the significance from your perspective of the fact that she wasn't eligible to file for asylum there? Oh, from the Philippines? Yes. Well, first of all, even assuming that that is actually correct and that she couldn't apply for asylum from the Philippines, it's really harmless there. And she was considered for a form of relief that she wouldn't otherwise have been able to apply for. So I'm not really sure what that really accomplishes to say that you're not eligible for something that was considered. But with respect, I'm not so sure it's as cut and dry that they weren't eligible to apply there. There's conflicting evidence in the record as to the nationality of the daughter in this case. Her certificate of live birth said she was a citizen of the Philippines, but then there's a stamp in her passport that indicates that she was adjusted to lawful permanent residence there. So I don't know if it's clear what exactly her nationality was in this case. But again, had this been an issue that was raised to the immigration judge or to the board, and had they challenged this issue of whether or not she should have been able to apply for asylum, that would be something that would be properly before this court. But again, at the time of the hearing, they didn't argue that they shouldn't be allowed to apply for asylum in the Philippines. Right. Hypothetically, just so I'm stating this hypothetically, and I'm not saying that we haven't obviously conferenced on this, but if the court were to deny relief here on this record and as far as that goes, and they're talking about filing for a petition to reopen, what is the effect of if they're denied relief here that then immediately the stay is lifted and so she would have to petition for a reopen out of the country? Is that what is that way? You mean with respect to a potential motion to reopen based on ineffective assistance of counsel before the board? Right. I haven't considered that. Well, the stay would be lifted in this case, obviously. I guess she would have to file a stay with the board with respect to a motion to reopen and ask the board for a stay based on that motion to reopen. I don't think it's automatically stayed based depending on the filing of a motion to reopen. So I think that's probably the recourse they would have to take if the court were to deny relief here. So with respect to the issue of asylum in India, the firm resettlement finding was certainly given the fact that they haven't exhausted it. The firm resettlement finding is an independently dispositive finding that precludes any grant of asylum from India. With respect to withholding of removal, the immigration judge found that petitioners hadn't established past persecution. With respect to India, based on her claim that she had been approached by the police in India that they had questioned her and that she'd paid them a bribe and that they'd left. The immigration judge found that this was an instance where she wasn't mistreated. It was simply an inquiry by the police. She paid a bribe and they warned her not to associate with Sikh terrorists or Sikh militants. And nothing happened as a result of this encounter with the police and the immigration judge properly determined that that was not a sufficient basis to rise to the level of past persecution within the meaning of the IMF. Well, if we were to find, if we were to determine that, this is another hypothetical, Ms. Kaur could seek asylum from India. Could this panel affirm the BIA's denial of relief or would it have to be remanded for the agency to make a specific determination of asylum based on alleged persecution in India? Just to clarify, are you speaking about the firm resettlement finding that denied the asylum relief? Because I know that petitioners have argued that because the board adopted it and affirmed while citing to Bourbano that that somehow revives the firm resettlement issue and that would reopen the issue to the court regarding asylum. But again, what the court has said in the past with respect to adopting and affirming under Bourbano is it said to the extent the court, the board disagrees with the immigration judge that that doesn't necessarily revive an issue. For example, in this court's decision in Kin against Holder, the court noted that if the board ignores a procedural defect and then adopts and affirms under Bourbano, then that revives the issue. The board in this case didn't ignore any procedural defect. The board made a specific finding that the issue of firm resettlement had not been raised to it. And that, in effect, is outside of its adoptance and affirmance of Bourbano and is a new issue that is on appeal before this court. So the fact that the board cited Bourbano doesn't revive that issue to the court with respect to the firm resettlement in asylum. Is that what you were getting at? Yeah, I guess, but okay, so explain to me just in terms of now with the supplemental brief being filed, what are you asking the court to do right now and what are you saying? You're saying that the firm resettlement is not before the court and then you're saying to deny? Well, that in itself is a basis for the denial of asylum. So the fact that there's no jurisdiction to review that means that the court would have to dismiss the petition with respect to that claim. Again, I would reemphasize that the government's position here is that that brief was extremely late filed and should not be accepted by the court. We get that. Let's cut to the chase. Let's assume we, A, allow the brief. B, we find that the firm resettlement issue was exhausted. Quickly then, what would be your arguments as to why relief should still be denied, both on asylum and then with respect to withholding of removal? With respect to asylum, as I understand Petitioner's Council, we only look to pass persecution in India. With respect to withholding of removal and CAT relief, because she could presumably be removed to either one of the countries, it's still relevant to look to what she might be facing there in terms of danger. So if that's the case, has the BIA adequately addressed those contingencies in terms of what we get to review on this appeal? And your argument is that their findings with respect to both India and the Philippines as far as persecution have been adequately decided by the BIA and the IJ? Yes, Your Honor. I'm out of time. May I answer that briefly? You can answer the question. Yes. Well, with respect to India, the finding was that there was no past persecution. Remember that the petitioners in this case, their only basis for asylum in India was on the basis of this incident with the police in India. So the immigration judge looked at that and determined that that was not a sufficient basis. With respect to the Philippines, it was a different finding. It was a finding that they hadn't established the requisite nexus to a protected ground. It's not on a protected ground. There's no evidence that it was nationality or ethnicity. It was money. Correct. My reading of the immigration judge's decision was that for India, it was simply whether she had... Suffered any persecution at all based on anything having to do with anything. And that there was a separate finding with respect to the Philippines. And is she subject to removal to both India and the Philippines? Yes. The immigration judge designated both countries for removal. I believe it was India first and then the Philippines as the second. Thank you very much for your time, Your Honor. I'll give you two minutes since we went over a couple minutes. Thank you, Judge. There is no automatic stay of removal from the Board of Immigration Appeals, just to make sure that's clear. Also, if the government is saying that it's not clear... Get closer to the mic so we can hear you. If the argument from the government is that it's not clear whether petitioners can seek asylum in the Philippines, then the matter would need to be remanded because the agency never weighed in on that in the first instance. Also, the IJ never considered the merits of the Indian asylum application. She stopped with the bar analysis, the resettlement analysis. There was no assessment of whether Ms. Khara had demonstrated a well-founded fear of future persecution in India. That's nowhere in the decision. So that would need to be remanded if the firm resettlement issue is disposed of by this Court in some way. Also, in a similar way, the judge in the withholding applications and CAT applications, she misrepresented or disregarded evidence, and she didn't do the full analysis. In almost all of those, if not all of those, she didn't examine whether, independent of any past harm showing, there was a requisite likelihood of future harm. She didn't do the full analysis. The matter has to be remanded. Also, the BIA in its decision did not hold that the firm resettlement issue was waived. The BIA used the word note. We note that, in their language, respondent did not meaningfully challenge the firm resettlement finding. If the Board was going to say that they did not reach that issue because they deemed it waived, it would have said that. Instead, the Board said, we affirm, per matter of Burbano, and did not carve out any exceptions. Therefore, everything that was before the IJ was before the Board. The underlying concerns for the exhaustion policy are satisfied here. Generally, if an adjudicative body says it hasn't been argued adequately, it hasn't been developed adequately, that's functionally pretty close to waiver. Correct, Judge, but I don't think that's what the Board is saying, because the issue was before the IJ, and so I think that was just a comment by the Board on how there was a deficiency in the appeal brief, but the Board still considered everything, and that's what its decision says. I see I've run out of time. Thank you. Sure, one more question. The BIA went specifically to the merits of the nexus question, and affirmed the IJ's determination that your client has firmly resettled in the Philippines. So let's say that we denied the position, whether for failure to exhaust, or with regard to the nexus question, what are your options from that point on? So if the petition is denied as to the Indian asylum application, I think that's what you mean, Your Honor? What would we argue should happen next? What would you do if we were to deny the appeal? Oh, the entire petition? We would file a motion to reopen before the Board. We probably will do that anyway, and I'd actually like to request that this be referred to mediation, because the Department of Homeland Security might be willing to join us in that motion. Also, the derivative... I didn't hear that they said that they would. I'm sorry? You thought you'd kind of bring that up in front of them in a whole class? They might be willing to? Wouldn't that be something that you should have called them about? I did, Your Honor. If they say they might be willing to? I have not talked to the Department of Homeland Security. I have spoken to the Department of Justice about it. And what did they say? Without apparently conferring with the agency, they said no. But we can also file the motion ourselves, even if it's not joint. Also, Navneet Gill appears to be eligible for deferred action for childhood arrivals. Thank you, Your Honors, very much. Counsel, did you want to say anything about mediation? We don't want to put you on the spot. Why don't you talk to counsel? Just for the benefit of our audience, the Ninth Circuit has a mediation program, so that even on appeal, if the parties appear to be in some posture where before we issue any decision, our mediation unit can work with the parties and sometimes, actually, pretty high rate of success, can resolve the case amicably, at least, and find further relief without us having to rule and perhaps issue an opinion that sets precedent. Thank you, counsel. We appreciate your appearances here and your willingness to participate in this. The matter is submitted.
judges: Fisher, Callahan, Nguyen